IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 05-CR-30196-WDS |
| ) | |
| SAMUEL R. HOGSETT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on defendant's motion to suppress evidence **(Doc. 20)** and supplement to the motion **(Doc. 21),** to which the government has filed a response **(Doc. 22)**. The Court held two days of hearings on the motion, April 5, 2006 and April 28, 2006, and took the matter under advisement pending further briefing by the parties.

The parties filed post-hearing memoranda of law **(*see* defendant's brief at Doc. 44; government's brief at Doc. 46)**. The government sought and was granted leave to file a supplement **(Doc. 49)**. Defense counsel subsequently sought leave to withdraw due to a conflict of interest **(Doc. 50)** which was granted after a hearing **(*see* Doc. 52)**. New counsel,[1] James Gomric, entered his appearance and was given leave of Court **(Doc. 60)** to file a supplement to the motion to suppress by September 1, 2006 which he did **( Doc. 62).** In accordance with the Court's Order, the government has now filed its response **(Doc. 64)** and this matter is ready for ruling.

---

[1] Attorney John Stobbs was appointed by the Court and given until August 1, 2006 to supplement the motion to suppress. Stobbs subsequently sought leave to withdraw (*see* Doc. 56), and Attorney James Gomric entered his appearance on behalf of the defendant (Doc. 54). The Court granted Stobb's motion to withdraw (Doc. 58).

**BACKGROUND**

The defendant is charged in a Superseding Indictment with drug and firearm related charges.  Count 1 of the Superseding Indictment charges that on or about July 16, 2005, the defendant, having previously been convicted of a felony punishable by imprisonment for a term exceeding one year possessed, in and affecting commerce, a firearm, Bryco Arms, Model J-22, .22 caliber semi-automatic pistol, in violation of **18 U.S.C. § 922(g)(1)**.  Count 2 charges that on or about July 16, 2005, the defendant possessed with the intent to distribute 0.5 grams of a mixture or substance containing cocaine in violation of **21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)**.  Count 3 charges that on or about July 16, 2005, the defendant, during and in relation to a drug-trafficking crime, that is, possession with intent to distribute 0.5 grams of cocaine, as alleged in Count 2, the defendant possessed a Bryco Arms. Model J-22, .22 caliber semi-automatic pistol, all in violation of **18 U.S.C. § 924(c).**

The defendant's motion to suppress seeks to suppress evidence seized as a result of a traffic stop of the defendant's car on July 16, 2005.  The defendant asserts that there was not probable cause to stop his vehicle.  In his supplemental memorandum in support of the motion to suppress, the defendant asserts that the length of the traffic stop prior to the discovery of the contraband establishes that the stop was pretextual.

**A.**     **Evidence Adduced at the Suppression Hearings**

The defendant's arrest was the result of the vehicle stop of the defendant.  The parties stipulated that on the date in question, July 16, 2005, sunset would have been at 8:24 P.M.  East Alton Police Officer Christian Cranmer testified that on the night in question he was working a 6 P.M to 6 A.M shift by himself.  At approximately 9:32 he observed a large white, four-door car,

a Mercury, traveling down Ohio Street and noticed that the license plate light was not functioning, in violation of Illinois state law.  He noticed that the taillights were on, but that the license plate was not illuminated.  Officer Cranmer turned his squad car around,  activated his lights and pulled over the white Mercury.   The driver of the car made a hard left turn, crossed the other lane of traffic and pulled into a parking lot, very close to a parked car in the lot. This action alarmed Officer Cranmer who positioned his squad car so that the Lincoln could not back out of the parking lot.  Cranmer radioed in the traffic stop, and asked the driver to get out of the car.  He noted that there was a passenger in the car.   Cranmer then asked the defendant for his driver's license and name, which the defendant produced.  The defendant appeared nervous, fidgety, and would not make direct eye contact with Cranmer.  Because of the defendant's demeanor, Cranmer decided to question the defendant further.  Cranmer asked if there was anything illegal in the car, to which the defendant replied, "No." The police report and tow record indicate that the stop was made at 9:32 P.M.

      Two back-up officers, Shook and McCormick, arrived a few minutes later.  At that time, Cranmer asked the defendant if Cranmer could search his vehicle, saying "Do you have any objection if I search your vehicle?"  The defendant gave his consent, and Cranmer told McCormick that he had consent to search.  McCormick stayed with the defendant while Officer Shook asked the passenger, a woman, to get out of the car.  Cranmer was looking into the passenger's door as she got out and saw a white, rock-like substance packaged in a clear plastic wrap, fall between her legs and onto the passenger seat.  He also saw what he believed was a container of crack cocaine.   He believed, based in part on the way that the object was packaged,[2]

---

      [2]The items were packaged in plastic wrap, with the end of the baggie tied in a knot.

that it was crack cocaine and asked the other officers to place the defendant and his passenger in handcuffs. The defendant was placed in Cranmer's squad car and the female passenger, Tiesha Ford, was placed in Officer Shook's car.

Cranmer inventoried the car, and found, between the passenger's side and the driver's seat the chrome portion of a pistol that was underneath the front seat. Officer Shook seized the gun from under the seat. The car was later towed. The defendant and Ford were questioned at the Police Department later that day.[3] At the police department, Cranmer learned that the defendant was a convicted felon, and of the defendant's criminal history.

Officer McCormick testified that he has been a police officer for approximately 2 years, including one year part-time for the South Roxana Police Department. On the night in question, he was in training, working with Officer Shook on the night shift. Acting as backup, he and Officer Shook assisted in a traffic stop by Officer Cranmer at approximately 9:30 P.M.. Upon arriving, he observed that Cranmer had the defendant out of the car and that the car was very close to the next car in the lot with less than a foot of clearance between the cars. As McCormick arrived, he was asked by Cranmer to stand with the defendant and Cranmer told him that the defendant had given his permission to search the car. McCormick placed the defendant under arrest after Cranmer briefly went into the passenger side of the car, and then quickly got out and gave McCormick the sign to handcuff the defendant and place him under arrest.[4] The female

---

[3]The defendant does not seek to suppress any statements made, therefore, the Court need not address the activities that occurred after the defendant was taken into custody and questioned.

[4]McCormick testified that Cranmer used a hand signal of crossed wrists to indicate that the defendant should be handcuffed and arrested. He stated that this is standard procedure to avoid using oral communication, and presumably, tipping off someone that he is about to be

passenger was taken into custody by Officer Shook.  McCormick checked the defendant for any weapons and then put him into the squad car.  Cranmer and Shook then searched the defendant's vehicle.  McCormick asked Cranmer what he had found, and was told crack cocaine and a loaded handgun. The vehicle was inventoried and impounded. He learned of the defendant's criminal history at the jail later that evening.

He testified on cross examination that the defendant appeared nervous to him while he was watching the defendant before placing him under arrest, because the defendant kept trying to turn around and face the car and his voice was shaky.

The defendant presented several witnesses, including his father, Samuel Hogsett, Sr., who testified that he and his wife purchased the used Mercury for $1,000 for their son and titled it in his wife's name.  The defendant had seen the car for sale along the side of the road, and Hogsett, Sr. testified that although it needed "some work," it did not need any electrical work and all the lights worked.  He also testified that when he went to pick up the car from the tow lot, although the inside was torn up and it had a flat tire, the lights were working, including the rear registration light.  He also testified that he had observed the rear registration light working on his son's car shortly before July 16, 2005, but that it was "dim."

James Gleason testified for the defendant that he observed the traffic stop on July 16, 2005, which occurred on a parking lot around the corner from his mother's house.  He noticed that the stop involved a large white car, and a couple of police cars.  Gleason testified on direct examination that he believed it was not totally dark, but he was unsure of that fact.  Gleason stated that he had purchased cocaine from the defendant, whom he knew as "Junior," on several

---

arrested.

occasions (as many as 40-50 times) and had purchased dime bags of marijuana from the female in the defendant's car, but did not know her name.  Gleason also testified that he had seen the defendant with a gun, but had only seen the butt of the gun.  The defendant had shown him the gun to "prove a point that he wasn't messin' around. . .That he didn't want to have no problems when he come down here. . . ."  **(Tr. Suppression Hearing 4/5/2006 p. 101).**

The defendant also called David Shook to testify.  Shook is a Patrol Officer with the East Alton Police Department, and was on patrol the night of the defendant's arrest.  Officer Shook testified that he received a call about a traffic stop at 9:32 the night of July 16, 2005, and that he believed that Officer McCormick was riding in officer Cranmer's squad car that night.  Although he was not there when the stop initially occurred, he arrived within a few minutes of the stop. He indicated that although his initial report indicates that he arrived at 9:49, he believed that was an error in his report and that his arrival time would have been more like 9:35.  He further indicated that he did not know the time of the initial stop.

Shook testified that the white car was parked very near the next car in the lot, and that a male and female were in the car.  Cranmer asked the driver to get out because there was not enough room for an officer to talk to them and stand beside the car.  Shook did not notice if the car had its headlights on.  He heard Cranmer ask permission to search the car at approximately the same time Shook was asking the passenger to get out of the car.  He heard the driver give his consent to search, but did not recall the exact words the defendant used.  The passenger was very nervous, and Shook described her as "Scared to death.  Frozen solid." **(Tr. Continuation of Suppression Hearing, 4/28/2006, p. 11)**.  When she got out of the car, Shook noticed what looked like crack cocaine on the front seat where she had been sitting.  Cranmer seized the crack,

and then did a search of the vehicle once the defendant and Ford were secured in the police vehicles. Shook assisted in the search to the point where Cranmer found the gun under the seat. Shook took custody of the gun, which was located under the passenger seat towards the left front corner, in the "hump" area.

Shook stated that the East Alton Police Department policy is that once a driver is arrested, the car will be towed and before towing, it will be inventoried, which is what occurred in this case.    The officers each testified that they did not recall any briefings about either the defendant, or his car, in relation to any drug dealings or other criminal activity.

Tyesha Ford, the passenger in the defendant's vehicle on July 16, 2005, testified that she has known the defendant for a long time and that the night they were pulled over, it was dark and the officer said that they did not have a plate light.  She thought that perhaps the headlights were not on in the car, but that the street lights were on that night **(Tr. 4/28/2006 p. 27).** She denied having sold marijuana previously, but acknowledged using it.  She also denied having cocaine that night, but stated that the defendant pulled it from his pocket after they got pulled over **(*Id.* at 28, 38-39).**  She thought they were going  to sell drugs that night **(*Id.* at 29-30).**

She indicated that it was approximately 15 minutes between the stop and the search of the vehicle.  She said that she was on the telephone during the stop and that one of the officers came to the car and she was still on the telephone.  She remained on the telephone when she got out of the car and talked until the police found the cocaine and placed the defendant and Ford under arrest.

Ford testified that when they got pulled over, but before they were asked to get out of the car, the defendant was "pulling stuff out of his pocket, which was his dope and his pistol, and he

7

was sitting right there and he asked me to put it in . . .my purse." (*Id.* at 38-39)  She said, "no" because her purse was in the backseat.  She further stated "when the officer came, he [the defendant] put this gun in between the seats before the officer came back to the car to search it.  He put it between the seats." (*Id.* at 39).   She indicated that the drugs were sitting in her lap because the defendant put them there.  "[H]is stuff was sitting on my lap because he put it over there. . . he asked me to put it up, and it was sitting on the seat, and when I lifted up, it slid back." (*Id.*) (*See also* p. 52-53).   She indicated that it was a very short time between being asked to get out of the car and the discovery of the drugs.  "He probably [sic] going through it for like ten seconds before he found the dope." (*Id.*).   The gun was discovered soon there after.  (*Id.*)

Ford also testified that she had been with the defendant when he had delivered drugs in the past (*Id.* at 42), and had previously seen the defendant with the same gun.  (*Id.* at 44-46).  Ford confirmed that the officer told them that they had been stopped for not having a plate light (*Id.* at 49) and that the defendant appeared nervous once he was pulled over. (*Id.* at 50).

The government has filed an addendum (Doc. 49-3) to its briefs in opposition to the defendant's motion to suppress which includes a transcript of the police radio communications from the East Alton Police Department.  The Court **FINDS** that the East Alton Police Department dispatch transcript is the most reliable evidence of the timing of the events surrounding the stop of the defendant.  It indicates that at 9:23 P.M. Officer Cranmer called in the traffic stop of Samuel Hogsett.  The next entry is at 9:26 P.M. when Cranmer sought information on the driver of the stopped car.  At 9:31 P.M, Cranmer sought information on the passenger, Tyesha Ford, and at 9:32 P.M. was advised that there was a warrant on the passenger.

8

At that time, Cranmer indicated that both the driver and the passenger had been secured. At 9:34 Cranmer requested a tow truck, and at 9:40 P.M, Officer Shook requested a check be run on a firearm. The officers arrived at the police station with the defendant and Ford at 10:16 P.M, which was 53 minutes from the initial stop.

## ANALYSIS

The defendant filed his initial motion to suppress evidence and two supplements to the motion. The defendant asserts: 1) that the stop of the vehicle was not based on probable cause; 2) the stop cannot be justified by reasonable suspicion; 3) the length of the stop prior to the discovery of any contraband establishes that the stop was pretextual. In support of these assertions, the defendant claims that there were inconsistencies with respect to the time of the traffic stop, uncertainty over the time of the stop, and that the rear registration light was working.

### A.   The Traffic Stop.

The defendant asserts that the stop was pretextual, and not based on probable cause. The Seventh Circuit has held "Police can stop an automobile when they have probably cause to believe that the driver violated even a minor traffic law." **United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006).** In the Seventh Circuit, an objective two-part standard is employed for traffic stops: "[W]e ask whether there was probable cause to stop and whether the stopping officer was acting with authority to make the stop." **United States v. Smith, 80 F.3d 215, 219 (7th Cir. 1996), citing United States v. Willis, 61 F.3d 526, 530 (7th Cir. 1995).** The defendant does not claim that Officer Cranmer was without authority to make the stop, he objects to the probable cause to make a traffic stop of the vehicle.

"Probable cause exists when an officer reasonably believes that a driver committed a

9

traffic offense." ***McDonald*, 453 F.3d at 960.**  Under Illinois law, vehicles must have a functioning rear registration light on their vehicles.  ***See*, 625 ILCS 5/12-201(c).** [5]  "[T]he issue is not whether [the defendant] would have been convicted of a violation in a traffic court.  The issue is whether there was probable cause that a traffic law had been violated." *Smith*, 80 F.3d at 219.  "Probable cause. . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.  So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Sawyer,* 224 F.3d 675, 679 (7th Cir. 2000).  Here, Cranmer testified that as he passed the defendant's car traveling in the opposite direction, he looked in his side view mirror and noticed that the car did not have an illuminated plate on the rear.[6]  The defendant attempted to establish, through the testimony of the defendant's father, that the registration light was working prior to July 16, 2005.  The Court finds Officer Cranmer's

---

[5]625 ILCS 5/12-201(c) provides:

> Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light a rear registration plate when required and render it clearly legible from a distance of 50 feet to the rear.  Any tail lamp or tail lamps, together with any separate lamp or lamps for illuminating a rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

[6]The defendant attempts to challenge the testimony of Cranmer by arguing that Cranmer was looking to his right, and could not have seen the defendant's car lights from the passenger's side mirror of his squad car.  The Court FINDS that the testimony of Cranmer was that when he looked in his side mirror he could see the car without its registration light.  He did not specify which side mirror, but did testify, "Because I didn't initially look inside the vehicle as it passed me. . . . I was driving forward, *and when I looked over back in my mirror*, I observed the registration light to not be on." (Tr. 4/5/2005 p. 41)(emphasis added) (*See also* Tr. 4/5/2006 at pp. 8, 9 10).

testimony to be more reliable than that of the defendant's father.  Moreover, even if Cranmer was mistaken about the non-functioning light, "[a] stop and search can be reasonable even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred." *McDonald*, **453 F.3d at 960.**

The Court **FURTHER FINDS**, based on its review of the evidence and weighing the credibility of the witnesses, that Cranmer had probable cause to believe that the defendant was committing a traffic violation, and, under the totality of the circumstances, had probable cause to execute the traffic stop.  "So long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." *United States v. Cashman*, **216 F.3d 582, 586 (7th Cir. 2000).**  "A law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *Sawyer,* **224 F.3d at 678**.

In light of the fact that Officer Cranmer had the authority to conduct the traffic stop, and based on the Court's determination that there was a legitimate, non-pretextual reason for the traffic stop of the defendant's car based on an apparent violation of Illinois Motor Vehicle law, the Court **FINDS** that the government has met the objective two-part standard of *Smith* for traffic stops **80 F.3d at 219** ( "[W]e ask whether there was probable cause to stop and whether the stopping officer was acting with authority to make the stop.")   In light of this determination, the Court **FURTHER FINDS** that the defendant's alternative argument that there was not probable cause to stop the defendant's vehicle must fail as well.

**B.     The Search of the Vehicle and the Length of the Stop.**

The next inquiry, then, is whether the search of the defendant's car was pretextual because of the length of the stop of the vehicle.  The Court notes that there is some minor confusion about the time frame in which this stop occurred.  The defendant attempted to establish that the stop occurred sometime well before dark through the testimony of Gleason.  However, the Court finds Gleason's testimony to be less than illuminating on this issue.  Gleason was uncertain as to the time when he observed the stop.  He thought, however, that the street lights were on at the time of the stop.  The record reveals that dusk would have occurred at approximately an hour before the time of the stop, and that by 8:24 P.M., the defendant would have been required under Illinois law to have his headlights operating.  **625 ILCS 5/12-201(b)[7].**  Therefore, if he would have been required to have his headlights on, his registration light would have been illuminated at that time.  **§ 12-201(c).**  The police dispatch records reveal that the stop occurred sometime before 9:30, because the request for the driver's license information came in at 9:28 P.M.  The search occurred quickly thereafter, because the defendant and the passenger were reported secured by 9:32, and the gun had been seized by 9:40 P.M.

Although the officers' testimony about the times of the occurrences,  their reports as to the times of the stop and search, and the dispatch records may not be exactly the same, they all are consistent with the fact that the defendant was stopped, and a search quickly followed.  The defendant's position that there was a long period of time between the stop and the search is simply not supported by credible testimony or evidence in the record.   There is nothing in this

---

[7] The relevant provision of § 12-201(b) provides that "motor vehicles shall exhibit at least 2 lighted head lamps. . . . during the period from sunset to sunrise.. ."

12

record which would lead the Court to believe that the officers' testimonies as to the occurrences, and the sequence of events, is not credible.   Therefore, the Court **REJECTS** defendant's contention that the time between the stop and the search was of such a length that it amounted to a pretextual stop to search for contraband.

The defendant does not attempt to argue that the consent to search was not given or was invalid.  Accordingly, the Court **FINDS** that the search of the defendant's vehicle was conducted after a legitimate traffic stop and after the defendant gave his voluntary consent to search the vehicle.

## CONCLUSION

Therefore, the Court **FINDS** that the government's witnesses were more credible than the defendant's and **FURTHER FINDS** that Officer Cranmer had a legitimate basis for stopping the defendant's car.  The Court **FURTHER FINDS** that the defendant gave his consent to search the vehicle and, based on these findings,  **DENIES** defendant's motion to suppress evidence on all grounds raised.

This matter is scheduled for a final pre-trial conference on **Friday, October 20, 2006** at **11:00 A.M. and trial on Tuesday, October 31, 2006 at 10:00 A.M.**

**IT IS SO ORDERED.**

**DATED:** <u>11 October, 2006</u>

                                           <u>**s/ WILLIAM D. STIEHL**</u>
                                             **DISTRICT JUDGE**